## THE ANTIOCH.

*(District Court, D. California. March 12, 1880.)*

ADMIRALTY—SEAMAN'S WAGES—DISRATING COOK.

Where a cook was put off duty in consequence of negligence, disobedience, and insolence, he has no right to wages for the period during which he performed no duty.

*D. T. Sullivan,* proctor for libellant.
*W. G. Holmes,* proctor for claimant.

HOFFMAN, D. J. The libellant, who was cook on board the above vessel, was disrated by the master, and confined for a short period in irons for disobedience, neglect of duty, and insolence, culminating in an assault upon the master with a carving knife. The jury by whom he was tried acquitted him of a criminal charge based on this latter act. They probably took compassion on him on account of his age and infirmity. But their verdict can only be received as an expression of their conclusion that the charge was not proven beyond a reasonable doubt. It cannot be treated in this civil proceeding as a judicial exoneration of the libellant from all blame, still less as precluding the master from submitting the facts to the court and demanding its judgment on a preponderance of proofs upon their true character and legal consequences. I do not consider it necessary to rehearse in detail the evidence. It is sufficient to say that, in my judgment, and on his own evidence, the libellant's conduct was utterly unjustifiable. Upon an assault on him by the master of a very trivial character, and which could have inspired no reasonable apprehension of serious bodily harm, he seized a knife and with violent language threatened to plunge it into his body, and this threat, he declares on the stand, he would have carried into execution. Nor

was this grave offence an isolated ebullition of temper, or exhibition of an insubordinate spirit. His demeanor seems to have been habitually insolent, peevish, and refractory. He spoke of the master in the most insulting terms, and to him in a tone entirely inconsistent with their relations to each other.

But the more immediate cause for putting him off duty was his obstinate refusal to heed the master's repeated commands not to waste the ship's water. There may be some slight discrepancy as to the precise amount of water used by him; but it pretty plainly appears that nearly half of the whole supply had been used by the time the ship had performed 1,000 miles of her voyage, and on the thirtieth day from her port of departure. The total length of the voyage (from Hong Kong to this port) was 6,400 miles, and its duration 102 days. The master, alarmed for the safety of himself and crew, and exasperated at the libellant's persistent disregard of his orders on a matter of such vital importance, and also by his insolence and insubordination, carried to the extreme point of threats against his life, determined to put the man off duty, and in so doing I think him fully justified. Whether from natural defects of temper, or from age or disease, or from all these causes combined, the libellant was either unfit or unwilling to perform his duty. He was not disrated for a solitary act of insubordination and disobedience, but for persistent neglect to obey the master's orders on a point vitally affecting the whole ship's company. The cases, therefore, which declare the right of seamen to be restored to duty on making submission and tendering amends have no application. The faults of the libellant were radical and incorrigible, and as they justified the the master in putting him off duty, they also forbade his being restored to duty

In the case of *The Ranger*, Bee, 150, it appeared that the mate had been guilty of insolence and insubordination towards the master, and by so doing had become liable to correction. The master struck him two blows, to which the mate offered no resistance. He subsequently sent him out of the ship. Upon these facts the court refused to decree a forfeiture of wages. But the judge observes: "If, indeed, resistance had been made, and this man's hand lifted against his captain, I should have decreed a forfeiture of wages without hesitation."

It would seem from the report of this case that the question was as to the forfeiture of wages antecedently earned, and it cannot be doubted that, had the circumstances been similar to those of the case

at bar, the learned judge would have decreed a forfeiture of all wages already earned. But no such claim is made by the master in the present case. The libellant's right to wages up to the time he was disrated is admitted, and the amount due has been paid into court. The contest is as to his right to wages during the time when he did no duty, and his place was supplied by a substitute. I have already said that, in my opinion, the master was justified in putting the libellant off duty. If this be so the man has clearly no right to compensation for services not performed, which he had shown his unfitness or unwillingness to perform, and which his own misbehavior justified the master in not further trusting him to perform. It is true that the man was subjected to punishment. He was kept in irons for a week or 10 days, and was, perhaps, more or less confined to his room during the remainder of the voyage. But this latter confinement does not seem to have been close or rigorous, and it was not attended by any incident of harshness or oppression. The master had the right to inflict upon the libellant reasonable punishment. In view of the man's age and infirmities, I think putting him in irons was injudicious, perhaps harsh. I cannot say it was illegal. But, even if it were, that circumstance could have no effect to confer upon the libellant a right to compensation for services not performed, if his previous misconduct justified the master in refusing to allow him to perform, or attempt to perform, them; in other words, in putting him off duty.

The numerous cases which deny to the master the right to deduct from the wages of a seaman the costs and charges of imprisonment in a foreign jail, by the master's procurement, and the wages accruing during such imprisonment, have no application to this case. Imprisonment, by the master's order, of a seaman in a foreign jail is allowable only in very rare and extreme cases. It is always strongly discountenanced by the courts. If resorted to, the master will not be allowed to inflict a double punishment on the seaman by making him pay the costs and charges, or by exacting a forfeiture of his wages. But confinement on board ship, when justifiable, stands on different grounds. When necessary for the safety of the ship, or to secure a criminal in order that he may be delivered up to justice, it can give no right to wages for services not rendered. When inflicted merely as a punishment it will in general debar the master from insisting on the further punishment of forfeiture. When occasioned and continued by the perverse refusal of the seaman to

submit and return to duty, the statute itself deprives the latter of two day's wages for every day during which his refusal to do duty continues.

In a case mentioned by Judge Peters, in a note to *Thorne* v. *White*, 1 Pet..Adm. 173, that eminent judge refused wages to two seamen who were confined in irons "during the whole latter section of the return voyage," being of opinion that the confinement was justifiable and necessary for the safety of the ship. He allowed them, however, antecedently earned wages, but left them "to their remedy at common law by action for false imprisonment or any other mode of redress." Their wages were, in that case, withheld because their conduct had rendered it unsafe to permit them to earn them. They are denied in this case for an analogous reason. Experience had shown that the cook was unfit for his position. In neither case is the refusal to allow them a forfeiture or punishment. They are denied simply because, owing to the man's own fault, they were not earned.

Libel dismissed.